United States District Court
District of Massachusetts

| | |
|---|---|
| **RHODE ISLAND NOVELTY, INC.,**   )<br>                                  )<br>        Plaintiff,                )<br>                                  )<br>        v.                        )<br>                                  )<br>**IMPERIAL TOY, LLC,**             )<br>                                  )<br>        Defendant.                )<br>                                  ) | Civil Action No.<br>14-13568-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This breach of contract action is brought by plaintiff Rhode Island Novelty, Inc. ("RIN") against defendant Imperial Toy, LLC ("Imperial"). RIN alleges that after signing a license agreement that granted it the exclusive right to sell products covered by Imperial's patent, Imperial subsequently breached that agreement by permitting multiple third-parties also to sell covered products. Pending before the Court is defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case to the United States District Court for the Central District of California. For the reasons that follow, the motion will be denied.

## I. Background

### A. Underlying Facts

Imperial is a California corporation with a principal place of business in Los Angeles, California. Imperial designs, manufactures and sells a variety of children's novelty toys both domestically and internationally. It holds U.S. Patent No. 5,498,191 ("the '191 Patent") on a bubble-producing toy gun.

RIN is an importer and wholesaler of, inter alia, novelty toys and party supplies. RIN is a Rhode Island corporation with a principal place of business in Fall River, Massachusetts. RIN's prior principal place of business was, however, in Cumberland, Rhode Island. In 2011, RIN began moving its entire operation to Fall River, Massachusetts, where it now operates its sole location. That moving process was completed in November, 2012. Since then, all of RIN's business activities have been transacted in Massachusetts and it maintains a Massachusetts mailing address and phone numbers.

In July, 2012, Imperial's then-general counsel, Stefanie Schaeffer ("Schaeffer"), sent a cease and desist letter to RIN claiming that RIN's sale of its various "Bubble Blaster" products infringed the '191 Patent. The letter was sent to the address of RIN's then-corporate headquarters in Rhode Island. During the following months, Schaeffer and RIN's President, Bogdan Nowak ("Nowak"), engaged in discussions related to RIN's

alleged infringement. The negotiations were conducted by both e-mail and telephone; neither party ever travelled to meet the other. During the negotiations, Nowak's email signature included a phone number with a Rhode Island area code.

In late November, 2012, the parties signed and executed a two-page document entitled "Term Sheet to Settle Patent Claims Against Rhode Island Novelty" ("the License Agreement"). The License Agreement was signed by Nowak on November 24, 2012, at RIN's new headquarters in Massachusetts and on November 26, 2012, by Schaeffer in California.

The License Agreement states that, for a period of five years, Imperial will license its rights under the '191 Patent to RIN. The license grants RIN the right

> [to] make, have made, use, sell, offer for sale or import into the United States [products that encompass the '191 Patent] limited to the following markets: outdoor amusement parks, carnivals, festivals, zoos, parades, museums, fundraisers, redemption centers and internet sales.

The License Agreement also states that RIN will "be granted exclusivity" in the aforementioned markets in return for a 7% royalty fee on all gross sales on products that utilize the patent rights. It does not include clauses for either choice-of-law or forum selection.

RIN provided quarterly accounting reports and remitted appropriate royalties for sales on covered products through

September, 2013.  Each of the four quarterly accounting statements sent to Imperial included both a Massachusetts mailing address and Massachusetts phone and fax numbers.

In late 2013, RIN discovered that Imperial purportedly violated the exclusivity provision of the License Agreement by knowingly permitting five different entities to make, at a minimum, internet sales of products that encompassed the '191 Patent.  RIN contends that Imperial's failure to take affirmative steps to prevent those companies from infringing the '191 Patent necessarily puts it in breach of the License Agreement.  Furthermore, RIN contends that Imperial committed a "direct and knowing breach" of the License Agreement when it granted a similar, competing license to LightUpToys.com, Inc. ("LightUpToys") as part of an agreement to settle litigation between Imperial and LightUpToys in California.[1]

As a result, RIN has declined to submit quarterly accounting statements or to remit any royalties to Imperial since October, 2013.  The parties had extensive discussions about their disagreement until the filing of the instant suit.  RIN asserts that Imperial is in breach of the license while Imperial responds that RIN wrongfully has engaged in self-help and withheld royalty payments.

---

[1] RIN maintains that it was never consulted about the possibility of any settlement arrangement that would give LightUpToys a competing license.

**B. Procedural History**

On September 5, 2014, RIN filed its complaint in this Court invoking diversity jurisdiction under 28 U.S.C. § 1331. RIN's complaint asserts a single claim for breach of the License Agreement.

On October 29, 2014, the same day it was served with process in this case, Imperial filed suit against RIN in the Superior Court of California, County of Los Angeles. Imperial asserts a single count for breach of contract, alleging that RIN violated the License Agreement by its failure to submit quarterly accounting reports and royalty payments. On November 26, 2014, RIN timely removed Imperial's California suit to the United States District Court for the Central District of California. Shortly thereafter, RIN filed a motion to dismiss the California case for improper venue or, in the alternative, to transfer the case to this District.[2]

On December 15, 2014, Imperial filed a motion to dismiss this action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the alternative, to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a).

---

[2] That motion remains pending. See Case No. 14-cv-09139-FMO-PJW (C.D. Cal.).

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Legal Standard

In order to hear cases and issue judgments a district court must have personal jurisdiction over the parties. United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999). The plaintiff bears the burden of proving personal jurisdiction and must present specific facts to support its claim. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). The most common approach courts take for determining whether the plaintiff has met his or her burden is the "prima facie evidentiary standard".[3] Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). Under that standard, a court considers

> whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.

Id. (citation omitted). The Court accepts properly supported proffers of evidence by the plaintiff as true and considers facts put forward by the defendant to the extent they are uncontradicted by the plaintiff. Newman v. European Aeronautic Defence & Space Co. Eads N.V., 700 F. Supp. 2d 156, 159 (D. Mass. 2010).

To establish personal jurisdiction, a plaintiff must show that jurisdiction is 1) statutorily authorized and 2) consistent

---

[3] The parties agree that the "prima facie" standard is appropriate here.

with the Due Process Clause of the United States Constitution. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009). Because the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, reaches to the full extent that the Constitution allows, the Court proceeds directly to the constitutional analysis. See Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995); Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994).

The Due Process Clause requires minimum contacts between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

There are two forms of personal jurisdiction: general and specific. Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994). Specific jurisdiction is the narrower of the two and exists when the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. Id. at 60. Alternatively, general jurisdiction exists when the defendant has engaged in "continuous and systematic activity", unrelated to the suit, in the forum state. Id.

### B. Specific Jurisdiction

The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate. The

-7-

Court inquires whether 1) the claims arise out of or are related to the defendant's in-state activities, 2) the defendant has purposefully availed themselves of the laws of the forum state and 3) the exercise of jurisdiction is reasonable under the circumstances. See, e.g., Sawtelle, 70 F.3d at 1389; Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006).

**1. Relatedness**

The relatedness test is a "flexible, relaxed" standard that focuses on the nexus between the plaintiff's claim and the defendant's contacts with the forum state. Astro-Med, 591 F.3d at 9; Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206-07 (1st Cir. 1994). In contract cases, the Court asks "whether the defendant's contacts with the forum state were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir. 1999). In making that determination, the Court looks to the parties' prior negotiations, contemplated future consequences, actual course of dealing and the terms of the contract itself. Adelson, 510 F.3d at 49.

Imperial contends that RIN has failed to establish the required connection between its claim and Imperial's contacts with Massachusetts. It avers that the "focal point" of plaintiff's claim is the allegation that Imperial breached the License Agreement by granting a subsequent licensing agreement

-8-

to LightUpToys, an Indiana company, in order to settle a California case.  Imperial's argument, however, misses the mark.  The focus is not merely on the physical location of Imperial's settlement with LightUpToys but rather how that settlement relates to Imperial's contacts with Massachusetts.

Here, RIN alleges a breach of the License Agreement that establishes RIN's exclusive rights to sell products which utilize Imperial's '191 Patent during a five-year term.  The license contemplates a long-term business relationship which calls for RIN to sell covered products, submit quarterly accounting reports and remit royalties to Imperial, all from its place of business in Massachusetts.  Imperial subsequently received four quarterly statements and more than $90,000 in royalties from RIN before it became aware of Imperial's alleged breach.  All of the accounting statements were sent from Massachusetts and explicitly included RIN's Massachusetts contact information.

As Imperial notes, it first contacted RIN and subsequently conducted the bulk of negotiations with RIN while RIN's principal place of business was in Rhode Island.  Nevertheless, at the time the contract was executed in late November, 2012, RIN had completed its move to Massachusetts and, therefore, Imperial signed the License Agreement with a Massachusetts-based company.

Accordingly, both the origination of the contract and RIN's claim of alleged injury arise from, and are related to, Imperial's contacts with Massachusetts. See id. at 50. Thus, plaintiff has satisfied the relatedness prong of the jurisdictional analysis.

**2. Purposeful Availment**

The second issue for determining specific jurisdiction is whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State". Hanson v. Denckla, 357 U.S. 235, 253 (1958). Voluntariness and foreseeability are the focal points of that inquiry. Sawtelle, 70 F.3d at 1391. This requirement helps

> ensure[] that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations and internal quotations omitted).

The Court should analyze whether the defendant chose deliberately to engage in significant activities within the forum, or "has created continuing obligations between himself and residents of the forum". Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1995). The Court may also look to

> all of the communications and transactions between the parties, before, during, and after the consummation of the contract, to determine the degree and type of

> contact the defendant had with the forum, apart from the contract alone.

M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 278 (D. Mass. 2008).

Imperial contests the notion that it purposefully availed itself of Massachusetts laws and resources. It asserts that originally it contacted RIN at its Rhode Island address and negotiated a license with what it presumed to be a Rhode Island company. Moreover, it points out that its representatives never met RIN in Massachusetts and that it would therefore be unreasonable to permit RIN's subsequent move to Massachusetts to serve as the basis for subjecting it to personal jurisdiction within the Commonwealth.

The Court disagrees. Regardless of the initial pre-contract negotiations, RIN had transformed into a Massachusetts company by the time the License Agreement was executed by both parties. Thereafter, Imperial had a contractual relationship with a Massachusetts entity. The fact that Imperial's representatives never came to Massachusetts is not dispositive. Burger King, 471 U.S. at 476.

Furthermore, Imperial expressed no concern about RIN's domicile before entering into the License Agreement. If Imperial was genuinely apprehensive about being subjected to suit in RIN's forum, it could have included a forum selection

clause in the license but there is no evidence that subject even arose. Pesmel N. Am., LLC v. Caraustar Indus., Inc., 754 F. Supp. 2d 168, 174 (D. Mass. 2010).

Ultimately, Imperial made a conscious decision to create a long-term contractual relationship with a company that would retain the exclusive right to sell products that encompassed claims of its patent from RIN's home forum. Imperial fully expected to benefit from those sales through the remittance of royalties regardless of their source. See Daynard v. Ness, Motely, Loadhoalt, Richardson & Poole, P.A., 290 F.3d 42, 62 (1st Cir. 2002) (noting that "ongoing relationship" and contemplation that plaintiff "would render services in the forum" both contributed to finding purposeful availment). Therefore, Imperial deliberately chose to reap the benefits of associating with a Massachusetts-based entity and, in doing so, should logically have expected to become familiar with the courts of the Commonwealth. See Burger King, 471 U.S. at 473 ("[W]ith respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.").

Accordingly, the Court finds that RIN has established that Imperial purposefully availed itself of the privileges and obligations of conducting business in Massachusetts.

### 3. Reasonableness

Finally, the reasonableness inquiry operates on a sliding scale with the first two factors of the jurisdictional analysis, such that a stronger showing of relatedness and purposeful availment serves to ease the plaintiff's burden of establishing reasonableness. Risktimetry Analytics, LLC v. Altaira, LLC, 752 F. Supp. 2d 141, 147 (D. Mass. 2010). In evaluating reasonableness, this Court considers a series of "gestalt factors": 1) defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in effectively resolving the controversy and 5) the common interests of all sovereigns in promoting substantive social policies. Adelson, 510 F.3d at 51.

Here, the gestalt factors point toward the conclusion that exercising jurisdiction in Massachusetts would be reasonable. First, the Court recognizes that it would be somewhat inconvenient for Imperial to appear in Massachusetts given that the company is located in California. However, Imperial has not shown that litigating in Massachusetts is "onerous in a special, unusual, or other constitutionally significant way." Pritzker,

-13-

42 F.3d at 64; see Adelson, 510 F.3d at 51. That is especially true considering that Imperial advertises itself as an international company with both domestic and foreign offices.

The second factor also supports a finding of reasonableness because Massachusetts has a strong interest in providing its citizens with a convenient forum in which to assert their claims. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 718 (1st Cir. 1996). With respect to the third factor, it is undoubtedly more convenient for RIN to litigate its claim in Massachusetts. Moreover, the Court must defer to plaintiff's choice of forum. Id. Such deference is particularly compelling where, as here, plaintiff operates its principal place of business in the forum. See Sawtelle, 70 F.3d at 1395; M-R Logistics, 537 F. Supp. 2d at 279. Next, as is often the case in litigation involving private parties, the interest of the judicial system is neutral. Sawtelle, 70 F.3d at 1395. Finally, the dispute implicates social policy regarding the enforceability of contracts although that interest properly can be furthered in either of the competing forums here.

In sum, the exercise of jurisdiction in Massachusetts over Imperial is reasonable and does not offend "traditional notions

of fair play and substantial justice".  Thus, the Court will deny defendant's motion to dismiss for lack of personal jurisdiction.[4]

III. **Motion to Transfer**

   A. **Legal Standard**

Notwithstanding the fact that it has personal jurisdiction, this Court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice" pursuant to 28 U.S.C. § 1404(a). Albert v. F/V Misty Dawn, Inc., 950 F. Supp. 2d 321, 322 (D. Mass. 2013). The defendant bears the burden of proving that a transfer is warranted. Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2012). Factors for the Court to consider in determining whether to transfer include 1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake. Id.

While the decision to transfer a case under § 1404 lies solely within the sound discretion of the trial court, there is a presumption in favor of the plaintiff's choice of forum. Id.

---

[4] Because the Court finds that it has specific jurisdiction over Imperial, it need not determine if general jurisdiction also exists, although it may well be that because a significant dollar amount of Imperial's total international sales are made to Massachusetts customers, its in-forum activity qualifies as a "continuous and systematic" contact sufficient to trigger general jurisdiction.

(citation omitted); see Nowak, 94 F.3d at 719.  The Supreme Court has remarked that "unless the balance is strongly in favor of the defendant, [a] plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Moreover, in the face of concurrent litigation, courts typically follow the "first-to-file" rule which holds that the "first filed action is generally preferred in a choice-of-venue decision." EMC Corp. v. Parallel Iron, LLC, 914 F. Supp. 2d 125, 127 (D. Mass. 2012).  The defendant can overcome the presumption in favor of the first to file but must establish that either: 1) special circumstances justify a transfer or 2) convenience favors the later-filed action. Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16-17 (D. Mass. 2002).

**B.  Analysis**

Here, RIN filed its complaint on September 5, 2014.  Almost two months later, and presumably only because it had been served earlier that same day, Imperial filed its own lawsuit against RIN in California state court.  Imperial contends that RIN was deceptive in feigning to negotiate a resolution in order to delay Imperial from filing its own suit first.  Imperial further argues that RIN's complaint is, in effect, a declaratory

judgment action that should not be entitled to the benefits of the first-to-file rule.

Notably, the first-to-file rule would apply even if RIN's complaint were a declaratory judgment, which it is not. See Holmes Grp., 249 F. Supp. 2d at 16. Moreover, there is no evidence that RIN was on notice of the possible filing of an impending lawsuit against it by Imperial. Instead, it filed suit almost a full two months before Imperial did and, in doing so, is entitled to the benefit of the first-to-file rule. See Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co., 402 F. Supp. 2d 343, 349 (D. Mass. 2005) (plaintiff was under no obligation to continue, or even engage in, settlement discussions and had the right to file suit immediately). To the extent Imperial was unhappy with RIN's choice of forum, perhaps it should have filed an appropriate responsive pleading in this case rather than proceeding to the California courthouse to initiate parallel litigation.

Furthermore, the other factors of convenience do not warrant a transfer of the case. In particular, Imperial stresses that most of the witnesses in this case will be more inconvenienced by a trial in Massachusetts than by a trial in California. Courts in this district, however, have held that a venue transfer is inappropriate when it has the effect of merely shifting the inconvenience from one party to another. Momenta

Pharm., 841 F. Supp. 2d at 523; see Gemini Investors Inc. v. Ameripark, Inc., 542 F. Supp. 2d 119, 126-27 (D. Mass. 2008) (collecting cases).

The Court therefore concludes that a transfer of the pending action to the United States District Court for the Central District of California is unwarranted. That is true not only in light of the first-to-file rule but also because of the strong presumption in favor of plaintiff's choice of forum.

**ORDER**

For the foregoing reasons, defendant Imperial Toy, LLC's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case to the United States District Court for the Central District of California (Docket No. 7) is **DENIED.**

**So ordered.**

                                                          /s/ Nathaniel M. Gorton  
                                                          Nathaniel M. Gorton  
                                                          United States District Judge  
Dated April 10, 2015